217 N.J. Super. 475 (1987)
526 A.2d 256
VINCENT A. IACONO AND ELIZABETH IACONO, HIS WIFE, AND COLTS NECK REALTY, PLAINTIFFS-RESPONDENTS,
v.
TOLL BROTHERS, A PENNSYLVANIA CORPORATION, AND HUNTINGDON, INC., A PENNSYLVANIA CORPORATION AND A SUBSIDIARY OF TOLL BROTHERS, AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS, AND GRANT BROGDEN, INDIVIDUALLY AND SCHLOTT REALTORS, INC., DEFENDANTS.
TOLL BROTHERS, A PENNSYLVANIA CORPORATION AND HUNTINGDON, INC., A PENNSYLVANIA CORPORATION AND A SUBSIDIARY OF TOLL BROTHERS, THIRD PARTY PLAINTIFFS-APPELLANTS,
v.
SCHLOTT REALTORS, INC., THIRD PARTY DEFENDANT-RESPONDENT, AND MONMOUTH COUNTY BOARD OF REALTORS, A NEW JERSEY CORPORATION, AND MONMOUTH COUNTY MULTIPLE LISTING SERVICE, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1987.
Decided May 11, 1987.
*476 Before Judges FURMAN, SHEBELL and STERN.
Douglas K. Wolfson argued the cause for appellants (Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein; Douglas K. Wolfson and Bruce D. Greenberg on the brief).
James E. Collins argued the cause for respondents Vincent A. Iacono and Elizabeth Iacono (Cerrato, O'Connor, Dawes, Collins, Saker & Brown, attorneys).
Michael R. Scully argued the cause for respondent Schlott Realtors, Inc. (Hogan & Palace, attorneys).
Stewart M. Hutt argued the cause for Amicus Curiae New Jersey Builders Association (Hutt, Berkow & Jankowski, attorneys; Stewart M. Hutt and Ronald L. Shimanowitz on the brief).
No brief was filed on behalf of respondent Colts Neck Realty.
PER CURIAM.
Defendant Toll Brothers, a corporation, appeals from judgment granting specific performance of a contract for the sale of real property to plaintiffs and dismissing its third party complaint *477 against Schlott Realtors, in accordance with findings and conclusions by the trial judge following a five-day nonjury trial.
On March 14, 1985 plaintiffs signed an agreement to purchase a lot and a dwelling house to be constructed in Colts Neck Estates, a development of about 20 lots. The property had been listed with Monmouth County Multiple Listing Service at a purchase price of $243,000. The agreement of sale was for $225,000. A lot premium of $18,000 was imposed. Plaintiffs were shown the development, including a model home, by their own realtor and by defendant Grant Brogden, a salesman for Schlott Realtors, the listing broker. They paid a deposit of $19,000 upon the execution of the agreement of sale.
The agreement of sale was not signed by any officer or employee of Toll Brothers, the developer. Brogden signed as a witness. The agreement provided:
This Agreement has been obtained by Seller's salesman or agent who has no authority to bind Seller to this Agreement. This Agreement shall not be binding upon Seller unless signed by Seller within thirty (30) calendar days from the date below. Otherwise, the deposit money will be returned to the Buyer without interest, and, upon return of the deposit to Buyer, this Agreement shall be returned to Seller.
The trial judge concluded that, notwithstanding the home office acceptance clause, a bilateral agreement had been entered into by plaintiffs' acceptance, in signing the agreement of sale, of an offer from Toll Brothers in the multiple listing form submitted to them by Brogden. To enforce the home office acceptance clause, according to the trial judge, would be contrary to public policy. We disagree.
The multiple listing form set out, in addition to purchase price, location of the house, lot size, number and dimensions of the rooms, appliances to be supplied and a general description. The agreement of sale provided numerous additional restrictions, reservations and terms. Although drawn by Toll Brothers as seller, some of its provisions benefitted the Iaconos as buyer, e.g., the buyer's option to cancel if construction was not *478 begun within five months or substantially completed within eleven months.
According to 1 Corbin on Contracts (2 ed. 1963), § 50 at 195 and § 61 at 252:
An owner who merely "lists" his property with a land broker for sale or rent may thereby make no promise or offer of any kind. His communication to the broker may be no more than an invitation for the submission of proposals that the owner may or may not accept. In such a case, the owner is legally privileged to reject any proposal so made;
........
[I]f one who initiates a transaction or one who solicits offers expressly provides that he will not be bound by a contract until "approval at the home office" or until the expression of approval by an attorney or engineer, there will be no contract until that approval takes place, unless there are subsequent expressions of agreement to be bound without it. An acceptance that ignores such a requirement by the offeror can be no more than a counter-offer. One who has made such a requirement should not be permitted to trick the other party into a contract by "waiving" it, as long as the other party reasonably believes that his own expression of assent is revocable until it occurs.
The home office acceptance clause was unambiguous, as was the disclaimer of Brogden's authority. Both plaintiffs testified to their understanding that Brogden's signature was insufficient "to create a signed contract" and that the signature of someone representing Toll Brothers "would be necessary." We sustain the enforceability of the home office acceptance clause according to its plain terms. Without the acceptance of Toll Brothers by signing the agreement of sale, a binding bilateral agreement was not entered into upon only plaintiffs' affixing their signatures. Madaio v. McCarthy, 199 N.J. Super. 430, 433 (App.Div. 1985) certif. den., 101 N.J. 273 (1985).
The resolution that the home office acceptance clause is valid does not compel a reversal. The trial judge, alternatively, determined that plaintiffs were entitled to specific performance based upon equitable estoppel against Toll Brothers barring its denial of acceptance of the agreement of sale. That determination lacks adequate support in fact findings below, according to our view of the record. Accordingly, we are constrained to remand.
*479 Subsequent to plaintiffs' execution of the agreement of sale on March 14, 1985, plaintiffs requested and were granted several modifications and additions to the specifications for the house under construction. They signed endorsements and tendered checks in partial payment for construction changes. The checks were accepted and deposited by Toll Brothers. In conversations with plaintiffs, the house under construction was referred to by Brogden and by Toll Brothers' construction superintendent on the site as "your home" or "your new home."
We view as decisive on the equitable estoppel issue the events subsequent to 30 days after plaintiffs' execution of the agreement of sale during which Toll Brothers had the right of acceptance, that is, the events on and after April 13, 1985. Prior to that time, reliance upon conduct on behalf of Toll Brothers consistent with a binding bilateral agreement would not have been reasonable; nor could plaintiffs be found to have suffered any detriment. They conceded their awareness that Toll Brothers' signature on the agreement of sale was required to make it binding. They had committed themselves to a 30-day period within which Toll Brothers could accept the agreement by signing or, alternatively, reject it and return the deposit money.
After 30 days within which the agreement of sale was not signed by Toll Brothers and returned to plaintiffs, the pattern of endorsement of construction changes, partial payment for them and acceptance and deposit of plaintiffs' checks by Toll Brothers continued. There is a fact question on the record whether equitable estoppel arose thereafter through Toll Brothers' conduct or its silence in not informing plaintiffs that it was rejecting the agreement of sale or that it might reject it. By letter dated May 1, 1985 Toll Brothers communicated that it could not "accept ... [plaintiffs'] offer to purchase." According to plaintiffs, they did not receive that letter until May 8, 1985. Meanwhile, for approximately three weeks plaintiffs were not in the real estate market as prospective purchasers *480 looking for another house to purchase at a time of sharply rising real estate values.
Equitable estoppel or estoppel in pais was defined in Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449 cert. den., sub. nom. Mount Vernon Fire Insurance Co. v. Highway Trailer Co., 385 U.S. 834, 87 S.Ct. 77, 17 L.Ed.2d 68 (1966), quoting 3 Pomeroy's Equity Jurisprudence § 804 (5th ed. 1941) as:
... the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse....
See also, Miller v. Miller, 97 N.J. 154, 163 (1984), setting out the elements of equitable estoppel:
To establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action. Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment.
To resolve whether Toll Brothers should be estopped by its silence or conduct or both to deny its acceptance of the agreement of sale requires, as we have said, factual determinations not reached below. The vice president of sales for Toll Brothers testified that he informed plaintiffs' attorney by telephone on April 23, 1985 that there was "no deal." Plaintiffs' attorney in his testimony denied any such communication. The trial judge, resting his decision on other grounds, failed to state in his oral opinion which of the two directly conflicting versions he accepted as true. A fact finding to resolve that factual dispute should be reached on remand.
Other open unresolved fact questions include the following: whether Toll Brothers' silence or conduct or both following April 13, 1985 induced reliance by plaintiffs that Toll Brothers had accepted the agreement of sale; whether such reliance, if found factually, was reasonable and in good faith in the light of plaintiffs' concessions that they knew of and understood the *481 import of the home office acceptance clause in the agreement of sale; whether plaintiffs, relying upon Toll Brothers' silence or conduct or both, changed their position to their detriment by staying out of the rising real estate market as purchasers for a significant time interval after April 13, 1985.
Plaintiffs would be entitled to judgment on remand only if the determination of all the foregoing fact questions is in the affirmative. If so, there should be a further factual determination as to whether the Statute of Frauds was met.
Our disposition of this appeal necessarily requires reversal of the dismissal of Toll Brothers' third party cause of action against Schlott Realtors for wrongful execution and circulation of the multiple listing agreement.
We reverse and remand for further proceedings not inconsistent herewith to be concluded within 90 days. We do not retain jurisdiction.