225 N.J. Super. 87 (1988)
541 A.2d 1085
VINCENT A. IACONO AND ELIZABETH IACONO, HIS WIFE, AND COLTS NECK REALTY, PLAINTIFFS-RESPONDENTS,
v.
TOLL BROTHERS, A PENNSYLVANIA CORPORATION, AND HUNTINGDON, INC., A PENNSYLVANIA CORPORATION AND A SUBSIDIARY OF TOLL BROTHERS, AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AND GRANT BROGDEN, INDIVIDUALLY AND SCHLOTT REALTORS, INC., DEFENDANTS.
TOLL BROTHERS, A PENNSYLVANIA CORPORATION AND HUNTINGDON, INC., A PENNSYLVANIA CORPORATION AND A SUBSIDIARY OF TOLL BROTHERS, THIRD-PARTY PLAINTIFFS-APPELLANTS,
v.
SCHLOTT REALTORS, INC., THIRD-PARTY DEFENDANT-RESPONDENT, AND MONMOUTH COUNTY BOARD OF REALTORS, A. NEW JERSEY CORPORATION, AND MONMOUTH COUNTY MULTIPLE LISTING SERVICE, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 1988.
Decided May 16, 1988.
*88 Before Judges FURMAN, LONG and SCALERA.
Douglas K. Wolfson argued the cause for the appellants Toll Brothers and Huntingdon, Inc. (Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, attorneys; Douglas K. Wolfson and Bruce D. Greenberg on the brief).
James E. Collins argued the cause for the respondents Vincent A. Iacono and Elizabeth Iacono (Cerrato, O'Connor, Dawes, Collins, Saker & Brown, attorneys).
No brief was filed on behalf of Schlott Realtors, Inc.
The opinion of the court was delivered by FURMAN, P.J.A.D.
Defendant Toll Brothers, a corporation, appeals for the second time during the course of this litigation from a judgment of *89 specific performance of a contract for the sale of real property to plaintiffs. We affirm.
Our prior opinion, reversing and remanding with directions to the trial court, is published at 217 N.J. Super. 475 (App.Div. 1987). That opinion sets forth the background facts. We upheld the enforceability of a 30-day home office acceptance clause in what was otherwise a complete and integral agreement of sale specifying the terms of sale, describing the property and signed by plaintiffs. Only the signature of Toll Brothers was lacking. The home office acceptance clause provided:
This Agreement has been obtained by Seller's salesman or agent who has no authority to bind Seller to this Agreement. This Agreement shall not be binding upon Seller unless signed by Seller within thirty (30) calendar days from the date below. Otherwise, the deposit money will be returned to the Buyer without interest, and, upon return of the deposit to Buyer, this Agreement shall be returned to Seller.
The trial judge rested his first judgment of specific performance on the alternative grounds of nonenforceability of the home office acceptance clause and equitable estoppel against Toll Brothers. We reversed on the first ground and reversed and remanded on the second ground.
At trial both plaintiffs testified to their awareness that Toll Brothers' signature on the agreement of sale was necessary to make it binding. Accordingly, we rejected the trial judge's determination of reasonable reliance by plaintiffs upon conduct by Toll Brothers consistent with a binding contract during the 30-day period subject to the home office acceptance clause.
We remanded, rather than reversing outright, because of our recognition that the trial judge had relied upon silence and conduct of Toll Brothers after, as well as during, the 30-day period. He set out a series of dealings between the parties, which, he found, induced reliance by plaintiffs that Toll Brothers had accepted the agreement of sale. Because of their continuation after expiration of the 30-day period, coupled with Toll Brothers' failure to notify plaintiffs that it was not accepting the contract, we hypothesized that the alternative holding *90 of equitable estoppel may have been justified on the record. We commented at 217 N.J. Super. 479:
After 30 days within which the agreement of sale was not signed by Toll Brothers and returned to plaintiffs, the pattern of endorsement of construction changes, partial payment for them and acceptance and deposit of plaintiffs' checks by Toll Brothers continued.
Accordingly, we remanded on the issue of equitable estoppel with these directions:
To resolve whether Toll Brothers should be estopped by its silence or conduct or both to deny its acceptance of the agreement of sale requires, as we have said, factual determinations not reached below. The vice president of sales for Toll Brothers testified that he informed plaintiffs' attorney by telephone on April 23, 1985 that there was "no deal." Plaintiffs' attorney in his testimony denied any such communication. The trial judge, resting his decision on other grounds, failed to state in his oral opinion which of the two directly conflicting versions he accepted as true. A fact finding to resolve that factual dispute should be reached on remand.
Other open unresolved fact questions include the following: whether Toll Brothers' silence or conduct or both following April 13, 1985 induced reliance by plaintiffs that Toll Brothers had accepted the agreement of sale; whether such reliance, if found factually, was reasonable and in good faith in the light of plaintiffs' concessions that they knew of and understood the import of the home office acceptance clause in the agreement of sale; whether plaintiffs, relying upon Toll Brothers' silence or conduct or both, changed their position to their detriment by staying out of the rising real estate market as purchasers for a significant time interval after April 13, 1985.
Plaintiffs would be entitled to judgment on remand only if the determination of all the foregoing fact questions is in the affirmative. If so, there should be a further factual determination as to whether the Statute of Frauds was met.
Upon remand, neither party requested the opportunity to present additional testimony. The same trial judge reached findings of fact sufficiently supported in the record justifying his invoking the bar of equitable estoppel against Toll Brothers, Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974). He determined specifically that there was insufficient proof of a telephone communication from Toll Brothers to plaintiffs on April 23 that the "deal was off." He concluded:
The 30 day rejection period passed. The deposit checks were cashed; their house was coming out of the ground; they were making cosmetic selections for the interior. They paid for and made their mortgage application. They listed their home for sale and exposed themselves at least to a law suit if not serious monetary damages by signing an agreement to sell that house. If they lose *91 this law suit, they begin again the hunt for a new house in a radically changed market. To argue that they have suffered no legal detriment is not only foolish but heartless.
In short, this is as strong a case for a court of equity to resort to an estoppel to achieve basic justice as one can find in the many factual patterns which emerge from the cases.
We do not view as invalidating the trial court's fact findings that he again recapitulated acts of Toll Brothers during and not after the 30-day period subject to the home office acceptance clause. Those acts were relevant to the issues we framed for resolution because they established a pattern of dealings by Toll Brothers tending to induce confidence in plaintiffs that Toll Brothers viewed the home acceptance clause as pro forma only and would execute the agreement of sale.
What was crucial in reaching the result below was the conduct and silence of Toll Brothers after the running of the 30-day period, on and after April 13, 1985. Toll Brothers in no way communicated that it was not accepting the contract, until its letter with the return of deposit moneys was received by plaintiffs about 24 days later on May 8. Without a repudiation and reimbursement of deposit moneys on April 13 or a reasonable time of a few days thereafter, there was discernible to plaintiffs only the continuing pattern of recognition of them as the contract purchasers by Toll Brothers personnel, including Grant Brogden. Brogden joined Toll Brothers as an employee on April 13 after serving as real estate salesman for Schlott Realtors, the listing broker, when plaintiffs signed the agreement of sale.
Specifically, on and after April 13, plaintiff Elizabeth Iacono twice conferred at length with Brogden; plaintiffs and Brogden executed two additional order forms for kitchen, fireplace, front masonry, shutters, hall bath and powder room color selection and masonry and facing materials; on April 22 plaintiff Elizabeth Iacono delivered two checks payable, as she had been instructed, to a Toll Brothers' affiliate, totalling over $11,000, *92 for construction changes. The two checks were deposited by the Toll Brothers' affiliate on April 25. Even without a mortgage commitment, plaintiffs had no doubt of their financial qualifications for a mortgage in the amount provided in the agreement of sale.
We accept the trial judge's finding that, after April 13, plaintiffs reasonably relied on conduct and silence by Toll Brothers consistent with a binding contract, the natural and probable effect of which was to induce such reliance. See Miller v. Miller, 97 N.J. 154, 163 (1984). We also accept the trial judge's finding[1] that plaintiffs suffered a detriment in staying out of the sharply rising real estate market as purchasers for approximately three weeks in April and May 1985, in reliance upon a binding contract with Toll Brothers. The dollar amount of that loss was not established and, in our view, need not be measured exactly. Based upon the testimony of an accretion of $100,000 in the value of the property, about 40%, between May 1985 and 1986, the detriment suffered by plaintiffs was not minimal but substantial. Any significant detriment is sufficient to invoke an equitable estoppel, 3 Pomeroy's Equity Jurisprudence, (5 ed. Symons 1941) § 812 at 231-232.
Toll Brothers argues finally that the Statute of Frauds, N.J.S.A. 25:1-5, should be a bar because of the absence of a signature on the agreement of sale by someone authorized to sign on its behalf. According to Toll Brothers, even if the plaintiffs prevail on the equitable estoppel issue, they should be denied specific enforcement of the agreement to purchase what they described at trial as their "dream house," by the strict application of the Statute of Frauds.
*93 The effect of equitable estoppel against Toll Brothers is to estop it from denying its acceptance of the agreement of sale with plaintiffs. Equity treats as done what should be done, Martindell v. Fiduciary Counsel, Inc., 133 N.J. Eq. 408, 413 (E. & A. 1942). Toll Brothers is bound as if it had signed the agreement of sale. That agreement is complete and enforceable in equity. Specific performance is an available remedy to plaintiffs for enforcement of their agreement of sale.
2 Restatement, Contracts, § 129 at 321 (1981) provides:
A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement.
See in accord Hickey v. Green, 14 Mass. App. 671, 442 N.E.2d 37 (Mass. App. Ct. 1982); Chapman v. Bomann, 381 A.2d 1123 (Sup.Ct.Me. 1978).
According to Kufta v. Hughson, 46 N.J. Super. 222, 230 (Ch.Div. 1957).
There is no indication in the New Jersey authorities that the bar of the statute of frauds may be avoided on the theory of estoppel by circumstances which would not qualify as part performance within the cases hereinabove discussed.
As the decision of a lower court, Kufta is not controlling upon us. In any event, on this appeal the issue is not whether plaintiffs partially performed, rendering inequitable the literal application of the Statute of Frauds. Rather, the issue is whether Toll Brothers' silence and conduct in combination, after the expiration of the 30-day period, led plaintiffs to rely reasonably to their detriment that Toll Brothers had accepted or was accepting the agreement of sale, which was otherwise complete.
We hold that the Statute of Frauds is satisfied under the particular circumstance of this appeal.
We affirm.
NOTES
[1] Apparently on the record plaintiffs suffered no detriment in entering a contract on May 5 for the sale of their dwelling house in Old Bridge. That contract was voided by mutual agreement within a few days.