Michael Orlando & another *vs.* Philip Ottaviani & others.

Middlesex.   October 9, 1957. — March 7, 1958.

Present: Wilkins, C.J., Williams, Counihan, Whittemore, & Cutter, JJ.

*Frauds, Statute of. Estoppel. Fraud. Equity Jurisdiction,* Specific performance. *Trust,* Constructive trust.

A purchaser of a parcel of land who previous to his purchase had induced an abutter, having an option to purchase the parcel given him by the vendor, to relinquish the option in consideration of and in reliance upon the purchaser's oral promise to convey to the abutter a strip of the parcel next to the abutter's land after title to the parcel had been obtained from the vendor, and persons who took title to the parcel from the vendor as donees of the purchaser, were estopped to raise the defence of the statute of frauds in a suit in equity by the abutter for specific performance of the promise to convey the strip. [161]

Persons who took title to a parcel of land as donees of a purchaser thereof held the parcel in trust to convey a strip thereof to an abutter where it appeared that the purchaser, by reason of having induced the abutter to relinquish an option to purchase the parcel by promising to convey the strip to him, would have held the parcel on that trust if he, the purchaser, had taken title himself, even if the donees "had no knowledge" of the purchaser's promise to convey the strip. [162]

Bill in equity, filed in the Superior Court on August 27, 1956.

The plaintiffs appealed from an interlocutory decree confirming a master's report and from a final decree dismissing the bill entered by *Lurie, J.*

*Morris Shapiro*, for the plaintiffs.

*J. Walton Tuttle*, for the defendants.

WILLIAMS, J.   The facts in this suit for specific performance have been found by a master.   The plaintiffs, Michael Orlando and Leda Orlando, are husband and wife and own a parcel of land on Russell Road in Framingham where they reside.   Previous to July 27, 1956, the land adjoining their land to the south on Russell Road was owned by one George V. Fay and his wife, Pauline E. Fay.   Several years before 1956 Fay promised the Orlandos orally that "if at any time in the future he decided to sell the land, they would be given the 'first refusal,' that is, Fay would give them the chance to purchase the land ahead of anyone else at a price of $5,500 for the lot with the exception of a forty foot wide strip running approximately through the center of the lot, which strip Fay was to retain as a means of access to Russell Road from other land owned by him."   On or about June 1, 1956, the defendant Robert H. Quinn talked with Fay about purchasing his land and Fay informed him that he would have to take the matter up with Orlando because he had given his word to Orlando that "in the event he sold the land, he would give him first option to purchase."   On June 4, the defendant Philip Ottaviani, who was Quinn's father-in-law, told Fay that if he would sell the land he, Ottaviani, would purchase it and Fay told him that Orlando had the first refusal.   On the same evening Ottaviani saw Orlando and told him of Quinn's talk with Fay and what Fay had told him of Orlando having the first refusal.   Orlando told him that he was interested in the land especially in a fifteen foot strip next to his land on which there was a growth of trees.   Orlando and Ottaviani then inspected the land.   Later in the evening Ottaviani told Orlando that he wanted to buy the land and erect two houses on it, one for his son, the defendant Philip R. Ottaviani, and one for his son-in-law, Quinn.   He was informed by Mrs. Orlando

that she and her husband also wanted the land, especially the fifteen feet next to their land. On the following evening, June 5, Orlando told Ottaviani that he and his wife had decided to purchase the land but that if he, Ottaviani, was interested he, Orlando, would sell him all of the lot with the exception of the fifteen foot strip. Ottaviani then suggested that as eventually he was to have most of the land, Orlando should tell Fay that he, Ottaviani, "was to purchase the land," and that after engineers had staked off the fifteen foot strip he would deed it to Orlando, the latter paying his proportionate part of the purchase price and the engineer's fee. Orlando agreed and in reliance upon the promise to deed him the fifteen foot strip saw Fay. On the next day Ottaviani paid Fay a deposit of $500 on the purchase price of $5,500. "Fay accepted the deposit from Philip Ottaviani because of the conversation he had with the plaintiff Michael Orlando on the previous evening. Philip Ottaviani then called the plaintiff Leda Orlando on the telephone and told her he had made a deposit with Mr. Fay and that he would contact the plaintiffs as soon as he had gotten a deed. . . . [T]he plaintiffs would have purchased the said land from Fay for the sum of $5,500 and . . . Fay would have sold it to them for that price, if the agreement between Michael Orlando and Philip Ottaviani . . . had not been entered into."

Ottaviani caused the land to be surveyed on July 14, 1956, and a plan drawn by the surveyor, a copy of which is annexed to the report. Thereon it appears that the land has been divided into two lots, each facing on Russell Road, the northerly lot abutting the plaintiff's land being designated lot 1 and the southerly lot, 2. Lot 1 has a frontage of 94.87 feet on Russell Road and contains 13,139 square feet. Lot 2 has a frontage of 80.93 feet on Russell Road and contains 11,365 square feet. Between the lots is a forty foot strip reserved by Fay from Russell Road to his back land.

On July 27 George V. Fay and his wife conveyed lot 1 to Robert H. Quinn and his wife, Irene D. Quinn, the daughter of Ottaviani, as joint tenants, and on the same day

conveyed lot 2 to Philip R. Ottaviani, the defendant's son. The entire purchase price of $5,500 for both lots was paid by Ottaviani from his own funds. No one of the other defendants contributed to the purchase price nor paid any consideration to Ottaviani for the conveyance to them.

"On at least two occasions after June 6, 1956, once before July 27 and once after July 30, 1956, the plaintiff Michael Orlando spoke to the defendant Philip Ottaviani as to when he was going to give him a deed to the fifteen foot strip on the northerly side of lot 1 on which the trees are located, and on both occasions the defendant promised to see him later when he got his deed."

On August 23 Ottaviani in talking with Orlando "denied that he had made an agreement to convey the fifteen foot strip, and stated that he had only said he would convey . . . [it] 'if the lot was big enough,' that it was not big enough to allow him to do this, and he therefore refused to convey the strip to the plaintiffs."

The strip to which the parties referred is bounded and described as follows. "Beginning at the northwesterly corner of said land at Russell Road, thence running N. 76° 18' 50" E. 115 feet; thence turning and running S. 13° 18' E. 15 feet; thence turning and running S. 76° 18' 50" W. 115 feet to the easterly line of Russell Road; thence turning and running N. 13° 18' W. 15 feet to the point of beginning. This strip contains 1725 square feet of land."

At least until the bringing of this suit Philip R. Ottaviani, Robert H. Quinn and Irene D. Quinn "had no knowledge of the agreement of . . . Philip Ottaviani to convey said fifteen foot strip to the plaintiffs."

In conclusion the master found that "the plaintiffs voluntarily gave up their rights to purchase the land from Fay for the sum of $5,500 in consideration of and in reliance upon the promise of the defendant Philip Ottaviani to convey to them the fifteen foot strip above referred to after he had obtained the title to the premises. . . . [T]he failure of the defendant Philip Ottaviani to convey or have conveyed to the plaintiffs said fifteen foot strip constituted a failure of consideration

for the action of the plaintiffs in giving up their right to purchase the premises from Fay. . . . [T]here has been no such change of position, or partial performance on the part of the plaintiffs in this action, under the decisions in this Commonwealth, which estops the defendants from setting up the statute of frauds as a defence to this action."

The plaintiffs' objection to the master's third conclusion was on the grounds that it (1) was a ruling of law and (2) was not warranted by the "findings of facts." The plaintiffs' exceptions were overruled, the report was confirmed, and the plaintiffs appealed. A final decree was entered dismissing the bill from which decree the plaintiffs also appealed.

The master has found facts essential to the establishment of a contract whereby the plaintiffs were to relinquish their privilege to purchase Fay's land in consideration of Ottaviani's promise to convey to them the fifteen foot strip after obtaining it from Fay. *Fisher* v. *Katler*, 281 Mass. 340. The principal point to be decided is whether the defendants are estopped to set up the statute of frauds by reason of the plaintiffs' part performance of and change of position in reliance on the contract. *Glass* v. *Hulbert*, 102 Mass. 24, 43. *Tracy* v. *Blinn*, 236 Mass. 585. *Curran* v. *Magee*, 244 Mass. 1. *Gadsby* v. *Gadsby*, 275 Mass. 159, 168. *Andrews* v. *Charon*, 289 Mass. 1, 5. The plaintiffs plainly are left without redress unless the agreement is specifically performed and have been placed in their present situation by conduct of Ottaviani which amounts to fraud. *Gadsby* v. *Gadsby*, *supra*, pages 167–168.

Their change in position in reliance on Ottaviani's promise was not collateral to the contract but grew out of and was exclusively referable to it. See *Graves* v. *Goldthwait*, 153 Mass. 268, 270; *Potter* v. *Jacobs*, 111 Mass. 32; *Low* v. *Low*, 173 Mass. 580; *Harrell* v. *Sonnabend*, 191 Mass. 310; *Williams* v. *Carty*, 205 Mass. 396, 399. Compare *Sarkisian* v. *Teele*, 201 Mass. 596, 608; *Chase* v. *Aetna Rubber Co.* 321 Mass. 721. Ottaviani secured conveyances from the Fays

under an assurance made to the plaintiffs that he would transfer the fifteen foot strip to them. If Ottaviani had taken title to the land in his own name he would have held it in trust to convey the fifteen foot strip to the plaintiffs. *Glass* v. *Hulbert*, 102 Mass. 24, 39. *Taber* v. *Shields*, 258 Mass. 511, 512. The Quinns who are volunteers and in substance his donees hold their land which includes the fifteen foot strip on the same trust. *Moore* v. *Crawford*, 130 U. S. 122, 129. Pomeroy, Equity Jurisprudence, § 1053.

The plaintiffs are entitled to a conveyance by quitclaim deed of the fifteen foot strip above described from Quinn and his wife on payment to Ottaviani of the proportionate part of the price paid by him to the Fays and of the engineer's fee. This proportionate part is determinable by using the ratio of the area of the fifteen foot strip to the total area of the land purchased by Ottaviani. The engineer's fee is not reported and must be found by the Superior Court. The final decree is reversed and the case remanded to that court for a finding as to the amount of the fee and for entry of a final decree in conformity with this opinion, with costs to be paid by Ottaviani.

*So ordered.*