THOMAS W. HICKEY & another[1] vs. GLADYS M. GREEN.

Plymouth. October 18, 1982. — November 16, 1982.

Present: PERRETTA, CUTTER, & KASS, JJ.

*Frauds, Statute of. Contract,* Sale of real estate, Performance and breach. *Jurisdiction,* Specific performance. *Estoppel.*

In an action seeking specific performance of an oral promise to convey a residential vacant lot, the seller was estopped to assert the Statute of Frauds, where she knew that the buyers were planning to sell their home and build on the lot in question and where the buyers, in reliance upon the oral promise and within ten days thereafter, had accepted and endorsed a deposit check in a manner which probably bound them to sell their home [673-677]; however, the judge, in her discretion, was to reopen the proceeding on remand to receive a stipulation or evidence concerning the buyers' present obligation to sell their home and to reconsider the judgment in light of any changed circumstances [677].

CIVIL ACTION commenced in the Superior Court Department on July 29, 1980.

The case was heard by *Dolan, J.*

*Peter J. McCue* for the defendant.

*Steven Greenzang* for the plaintiffs.

CUTTER, J. This case is before us on a stipulation of facts (with various attached documents). A Superior Court judge has adopted the agreed facts as "findings." We are in the same position as was the trial judge (who received no evidence and saw and heard no witnesses).[2]

---

[1] His wife Patricia E. Hickey.

[2] This record presents what, at least under our prior practice, would have been regarded as a "case stated." See *Quinton Vespa Co.* v. *Construction Serv. Co.,* 343 Mass. 547, 551-552 (1962); *Robbins* v. *Department of Pub. Works,* 355 Mass. 328 (1969). Compare Mass.R.A.P. 8(d), as appearing in 378 Mass. 934 (1979).

Mrs. Gladys Green owns a lot (Lot S) in the Manomet section of Plymouth. In July, 1980, she advertised it for sale. On July 11 and 12, Hickey and his wife discussed with Mrs. Green purchasing Lot S and "orally agreed to a sale" for $15,000. Mrs. Green on July 12 accepted a deposit check of $500, marked by Hickey on the back, "Deposit on Lot . . . Massasoit Ave. Manomet . . . Subject to Variance from Town of Plymouth." Mrs. Green's brother and agent "was under the impression that a zoning variance was needed and [had] advised . . . Hickey to write" the quoted language on the deposit check. It turned out, however, by July 16 that no variance would be required. Hickey had left the payee line of the deposit check blank, because of uncertainty whether Mrs. Green or her brother was to receive the check and asked "Mrs. Green to fill in the appropriate name." Mrs. Green held the check, did not fill in the payee's name, and neither cashed nor endorsed it. Hickey "stated to Mrs. Green that his intention was to sell his home and build on Mrs. Green's lot."

"Relying upon the arrangements . . . with Mrs. Green," the Hickeys advertised their house on Sachem Road in newspapers on three days in July, 1980, and agreed with a purchaser for its sale and took from him a deposit check for $500 which they deposited in their own account.[3] On July 24, Mrs. Green told Hickey that she "no longer intended to sell her property to him" but had decided to sell to another for $16,000. Hickey told Mrs. Green that he had already sold his house and offered her $16,000 for Lot S. Mrs. Green refused this offer.

The Hickeys filed this complaint seeking specific performance. Mrs. Green asserts that relief is barred by the Statute of Frauds contained in G.L. c. 259, § 1. The trial judge granted specific performance.[4] Mrs. Green has appealed.

---

[3] On the back of the check was noted above the Hickeys' signatures endorsing the check "Deposit on Purchase of property at Sachem Rd. and First St., Manomet, Ma. Sale price, $44,000."

[4] The judgment ordered Mrs. Green to convey Lot S to the Hickeys but, probably by inadvertence, it failed to include an order that it be conveyed only upon payment by the grantees of the admittedly agreed price of $15,000.

The present rule applicable in most jurisdictions in the United States is succinctly set forth in Restatement (Second) of Contracts § 129 (1981).[5] The section reads: "A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, *in reasonable reliance on the contract* and on the continuing assent of the party against whom enforcement is sought, *has so changed his position that injustice can be avoided only by specific enforcement*" (emphasis supplied).[6] The earlier Massachusetts decisions laid down somewhat strict requirements for an estoppel precluding the assertion of the Statute of Frauds. See, e.g., *Glass* v. *Hulbert,* 102 Mass. 24, 31-32, 43-44 (1869); *Davis* v. *Downer,* 210 Mass. 573, 576-577 (1912); *Hazelton* v. *Lewis,* 267 Mass. 533, 538-540 (1929); *Andrews* v. *Charon,* 289 Mass. 1, 5-7 (1935), where specific performance was granted upon a considera-

---

[5] The late Justice Braucher, prior to his appointment to the Supreme Judicial Court, was the reporter for the Restatement (Second) of Contracts when the language of what is now § 129 was drafted; see Tent. Draft No. 4, § 197 (1968). The section appears to be consistent with Massachusetts law.

[6] Comments a and b to § 129, read (in part): "a. . . . This section restates what is widely known as the 'part performance doctrine.' Part performance is not an accurate designation of such acts as taking possession and making improvements when the contract does not provide for such acts, but such acts regularly bring the doctrine into play. The doctrine is contrary to the words of the Statute of Frauds, but it was established by English courts of equity soon after the enactment of the Statute. Payment of purchase-money, without more, was once thought sufficient to justify specific enforcement, but a contrary view now prevails, since in such cases restitution is an adequate remedy . . . . Enforcement has . . . been justified on the ground that repudiation after 'part performance' amounts to a 'virtual fraud.' A more accurate statement is that courts with equitable powers are vested by tradition with what in substance is a dispensing power based on the promisee's reliance, *a discretion to be exercised with caution* in the light of all the circumstances . . . [emphasis supplied].

"b. . . . Two distinct elements enter into the application of the rule of this Section: first, the extent to which the evidentiary function of the statutory formalities is fulfilled by the conduct of the parties; second, the reliance of the promisee, providing a compelling substantive basis for relief in addition to the expectations created by the promise."

tion of "the effect of all the facts in combination"; *Winstanley* v. *Chapman*, 325 Mass. 130, 133 (1949); Park, Real Estate Law § 883 (1981). See also *Curran* v. *Magee*, 244 Mass. 1, 4-6 (1923); *Chase* v. *Aetna Rubber Co.*, 321 Mass. 721, 724 (1947). Compare *Gadsby* v. *Gadsby*, 275 Mass. 159, 167-168 (1931); *Nichols* v. *Sanborn*, 320 Mass. 436, 438-439 (1946). Frequently there has been an actual change of possession and improvement of the transferred property, as well as full payment of the full purchase price, or one or more of these elements.

It is stated in Park, Real Estate Law § 883, at 334, that the "more recent decisions . . . indicate a trend on the part of the [Supreme Judicial C]ourt to find that the circumstances warrant specific performance." This appears to be a correct perception. See *Fisher* v. *MacDonald*, 332 Mass. 727, 729 (1955), where specific performance was granted upon a showing that the purchaser "was put into possession and . . . [had] furnished part of the consideration in money and services";[7] *Orlando* v. *Ottaviani*, 337 Mass. 157, 161-162 (1958), where specific performance was granted to the former holder of an option to buy a strip of land fifteen feet wide, important to the option holder, and the option had been surrendered in reliance upon an oral promise to convey the strip made by the purchaser of a larger parcel of which the fifteen-foot strip was a part;[8] *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 727-728 (1974), *S.C.*, 368 Mass. 811 (1975). Compare *Young* v. *Reed*, 6 Mass. App. Ct. 18, 20-21 (1978), where the questions arose on the defendants' motion for summary judgment and the summary judgment granted was reversed, so that the full facts could be developed at trial; *Fitzsimmons* v. *Kerrigan*, 9 Mass. App. Ct. 928 (1980). Compare also *D'Ambrosio* v. *Rizzo*, 12 Mass. App. Ct. 926 (1981).

---

[7] See comment on this case in 1955 Ann. Survey Mass. Law § 1.4, at 9-10, by Professor (later Judge) Cornelius J. Moynihan.

[8] The *Orlando* case was the basis of illustration 9 to Restatement (Second) of Contracts § 129 at 324-325 (1981). It was also discussed in 1958 Ann. Survey Mass. Law § 1.2, at 6-7, by Professor Moynihan.

The present facts reveal a simple case of a proposed purchase of a residential vacant lot, where the vendor, Mrs. Green, knew that the Hickeys were planning to sell their former home (possibly to obtain funds to pay her) and build on Lot S. The Hickeys, relying on Mrs. Green's oral promise, moved rapidly to make their sale without obtaining any adequate memorandum of the terms of what appears to have been intended to be a quick cash sale of Lot S. So rapid was action by the Hickeys that, by July 21, less than ten days after giving their deposit to Mrs. Green, they had accepted a deposit check for the sale of their house, endorsed the check, and placed it in their bank account. Above their signatures endorsing the check was a memorandum probably sufficient to satisfy the Statute of Frauds under *A.B.C. Auto Parts, Inc.* v. *Moran,* 359 Mass. 327, 329-331 (1971). Cf. *Guarino* v. *Zyfers,* 9 Mass. App. Ct. 874 (1980). At the very least, the Hickeys had bound themselves in a manner in which, to avoid a transfer of their own house, they might have had to engage in expensive litigation. No attorney has been shown to have been used either in the transaction between Mrs. Green and the Hickeys or in that between the Hickeys and their purchaser.

There is no denial by Mrs. Green of the oral contract between her and the Hickeys. This, under § 129 of the Restatement, is of some significance.[9] There can be no doubt (a) that Mrs. Green made the promise on which the Hickeys so promptly relied, and also (b) she, nearly as promptly, but not promptly enough, repudiated it because she had a better

---

[9] Comment d of Restatement (Second) of Contracts § 129, reads "d. . . . Where specific enforcement is rested on a transfer of possession plus either part payment of the price or the making of improvements, it is commonly said that the action taken by the purchaser must be unequivocally referable to the oral agreement. But this requirement is not insisted on *if the making of the promise is admitted or is clearly proved.* The promisee *must act in reasonable reliance on the promise, before the promisor has repudiated* it, and the action must be such that the remedy of restitution is inadequate. If these requirements are met, *neither taking of possession nor payment of money nor the making of improvements is essential* . . ." (emphasis supplied).

opportunity. The stipulated facts require the conclusion that in equity Mrs. Green's conduct cannot be condoned. This is not a case where either party is shown to have contemplated the negotiation of a purchase and sale agreement. If a written agreement had been expected, even by only one party, or would have been natural (because of the participation by lawyers or otherwise), a different situation might have existed. It is a permissible inference from the agreed facts that the rapid sale of the Hickeys' house was both appropriate and expected. These are not circumstances where negotiations fairly can be seen as inchoate. Compare *Tull v. Mister Donut Development Corp.,* 7 Mass. App. Ct. 626, 630-632 (1979).

We recognize that specific enforcement of Mrs. Green's promise to convey Lot S may well go somewhat beyond the circumstances considered in the *Fisher* case, 332 Mass. 727 (1955), and in the *Orlando* case, 337 Mass. 157 (1958), where specific performance was granted. It may seem (perhaps because the present facts are less complicated) to extend the principles stated in the *Cellucci* case (see esp. 2 Mass. App. Ct. at 728). We recognize also the cautionary language about granting specific performance in comment a to § 129 of the Restatement (see note 6, *supra*). No public interest behind G. L. c. 259, § 1, however, in the simple circumstances before us, will be violated if Mrs. Green fairly is held to her precise bargain by principles of equitable estoppel, subject to the considerations mentioned below.

Over two years have passed since July, 1980, and over a year since the trial judge's findings were filed on July 6, 1981. At that time, the principal agreed facts of record bearing upon the extent of the injury to the Hickeys (because of their reliance on Mrs. Green's promise to convey Lot S) were those based on the Hickeys' new obligation to convey their house to a purchaser. Performance of that agreement had been extended to May 1, 1981. If that agreement has been abrogated or modified since the trial, the case may take on a different posture. If enforcement of that agreement still will be sought, or if that agreement has

been carried out, the conveyance of Lot S by Mrs. Green should be required now.

The case, in any event, must be remanded to the trial judge for the purpose of amending the judgment to require conveyance of Lot S by Mrs. Green only upon payment to her in cash within a stated period of the balance of the agreed price of $15,000. The trial judge, however, in her discretion and upon proper offers of proof by counsel, may reopen the record to receive, in addition to the presently stipulated facts, a stipulation or evidence concerning the present status of the Hickeys' apparent obligation to sell their house. If the circumstances have changed, it will be open to the trial judge to require of Mrs. Green, instead of specific performance, only full restitution to the Hickeys of all costs reasonably caused to them in respect of these transactions (including advertising costs, deposits, and their reasonable costs for this litigation) with interest. The case is remanded to the Superior Court Department for further action consistent with this opinion. The Hickeys are to have costs of this appeal.

*So ordered.*