Toomey, J.
INTRODUCTION
Plaintiff Chester Lamantea (“Lamantea”) seeks summary judgment in his complaint against defendant Richard Zoila (“Zoila”), Trustee of WW Realty Trust. In his complaint, Lamantea requested specific performance of a contract (Count One), damages for trespass and equitable relief for encroachment arising from defendant’s placement of fill on his property (Count Two). Lamantea contended that Zoila had failed to comply with an oral agreement to convey to Lamantea a small strip of land abutting Lamantea’s property and that Zolla’s placement of fill on Lamantea’s property constitutes a continuing trespass. In the alternative, Lamantea seeks injunctive relief for Zolla’s placement of fill on his property without his permission. Zoila has filed a cross motion for summary judgment, arguing that Lamantea’s Count One is barred by the Statute of Frauds and that both claims are barred by the applicable statutes of limitations. For the following reasons, the defendant’s cross motion is ALLOWED in part and DENIED in part. The plaintiffs motion is DENIED.
BACKGROUND
During the 1980s, Peter Dowd and Christopher Christopher (“Christopher”) purchased approximately 100 acres in Shrewsbury, Massachusetts for development as a subdivision. The “Christopher” plan called for the construction of a road (Heywood Street), which abutted a portion of Lamantea’s property. Because the profile for the road provided that it be constructed approximately five feet above the existing grade, the construction plans called for a retaining wall or the grading of some of Lamantea’s property to provide lateral support for the road.
In the late 1980s, Lamantea and Christopher began discussing Lamantea’s interest in purchasing multiple buildable lots within the subdivision. In or about July of 1990, WW Realty, an entity owned by Christopher and Zoila, purchased the Heywood Street portion of the subdivision. WW Realty engaged Valente Construction Company to build the road. The principal of Valente Construction, Maurice Valente (“Valente”), encouraged Lamantea to permit the grading and filling of his property to avoid the need for a retaining wall.
At that time, Lamantea was still negotiating with WW Realty to purchase some lots in the subdivision. When it appeared as though the negotiations would be successful, Valente proceeded to grade and fill Lamantea’s property.[2] Lamentea claims to have believed that, in return for permission to place fill on his property, WW Realty would convey to him the strip of land between his property and Heywood Street (Parcel L).
On October 25, 1990, Lamantea brought suit against Valente Construction and WW Realty's predecessor in interest, alleging that his home had been damaged by construction of the roadway. In a June 1991 letter to Lamantea, Christopher offered to sell Lamantea Parcel L and two other parcels in exchange for the grading easement and dismissal of the 1990 lawsuit. After receiving Christopher’s letter, on June 13, 1991 Lamantea signed a purchase and sale agreement for Parcel E, and his purchase was effected on August 6, 1991. At that time, the grading work on Lamantea’s property had been completed. Lamantea Deposition #2, pp. 21, 24. A Plan, dated August 9, 1991, and recorded in the Worcester District Registry of Deeds, Book 653, Plan 113 shows a thirty-foot-wide temporary grading easement on Lamantea’s property and includes a typed, unsigned notation that Parcel L was to be conveyed to Lamantea.[3]
In February of 1992, Lamantea’s attorney, Henry J. Lane, wrote to WW Realty, stating that the grading on Lamantea’s property had been completed and asking to formalize the land “swap” and easement.[4] WW Realty did not respond. Seven years later, on April 28, 1999, Lamantea commenced the instant action.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis at 716.
Here, Zoila contends that he is entitled to judgment as a matter of law (i) because Lamantea will be unable to prove that the parties had an enforceable oral agreement for the conveyance of Parcel L and (ii) because both counts are time-barred by the applicable statutes of limitations.
A. The Statute of Frauds
Zoila contends that Lamantea’s action for specific performance is barred by the Statute of Frauds because Lamantea has no signed, written agreement to purchase Parcel L from WW Realty. For the reasons stated infra, Zoila will prevail upon that contention.
The Statute of Frauds provides, in pertinent part:
*504 No action shall be brought. . . [u]pon a contract for the sale of lands, tenements, or hereditaments or of any interest in or concerning them . . . unless the promise, contract, or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.
G.L.c. 259, §1. Upon the plaintiff rests the burden of proving the sufficiency of a writing to satisfy the Statute of Frauds, and that burden cannot be metwith evidence which “is at most no more than neutral, having no greater tendency to favor plaintiff than defendant.” Kalker v. Bailen, 290 Mass. 202, 205 (1935).
To demonstrate that the transaction complied with the Statute of Frauds, therefore, Lamantea must either show that he had a written, signed agreement for the conveyance of Parcel L or that some other form of agreement, deemed suitable under the Statute of Frauds, compels the conveyance. Although the parties agree that no written agreement exists, Lamantea suggests that he had a binding oral agreement to grant WW Realty a grading easement on his property in return for the conveyance of Parcel L and that that oral agreement comports with the Statute of Frauds. That alternative mode of satisfying the Statute of Frauds will succeed only if Lamantea proves both an oral agreement to convey the property and some writing containing the essential terms of the agreement. Schwanbeck v. Federal-Mogul Corp, 412 Mass. 703, 710 (1992). Additionally, should Lamantea demonstrate partial performance of an oral agreement, he maybe able to obtain the conveyance he seeks. Hickey v. Green, 14 Mass.App.Ct. 671, 673 (1982). We shall now treat, in turn, each exception to the general Statute of Frauds requirement of a writing.
1. The Requirement of an Oral Agreement
This court finds no genuine issue of material fact as to whether the parties had a binding oral agreement as to Parcel L. The record reflects no meeting of the minds. Defendant Zoila testified at his deposition that he had spoken to Lamantea about providing an easement in return for Parcel L. According to Zoila:
We told him that if he gave us this easement here, this temporary construction easement, we would give him this frontage because there is probably 150 feet, 200 feet, 175 feet of frontage where the wall, we feel, was still on our property. We feel between that wall and where our roadway is, we had about a foot or two of land that was, like, whole. It would be of no value to us. We told him that if he gave us a construction easement so we could fill it, we would deed this land over to him; that way he would have frontage on the street. . .
Lamantea relies upon Zolla’s testimony as evidence that the parties had an oral agreement to exchange the construction easement for the deed to Parcel L. Zoila responds, however, that the statement occurred in connection with Lamantea’s 1990 lawsuit, in the context of Zolla’s offer to sell Lamantea three parcels, including Parcel L. That offer was contingent on the conditions set forth in Christopher's June 1991 letter to Lamantea, to wit, that Christopher would sell the three parcels to Lamantea in exchange for both the grading easement and dismissal of the lawsuit.
Lamantea asserts that defendants are not entitled to summary judgment because there are disputed issues of fact as to whether the parties had an enforceable oral agreement. See Tull v. Mister Donut Development Corp., 7 Mass.App.Ct. 626, 630-32 (1979). It is beyond dispute, however, that the fill was placed on Lamantea’s property while the parties were still negotiating Lamantea’s proposed purchase of some lots in the subdivision, including Lot L. The recorded Plan, on which Lamantea relies, was dated August 9, 1991, two months after Christopher’s letter asserted that dismissal of the lawsuit was one of the conditions for the sale of the three parcels. Under those circumstances, Lamantea cannot plausibly maintain that the parties had a binding oral agreement. Where further negotiations are anticipated, it is not tenable for a promisee to have “relied and acted upon what a promissor has written, said or done.” Id. Here, there is no evidence, reasonably anticipated to be forthcoming at trial, of a meeting of the minds as to the terms of the alleged oral agreement.
2. The Requirement of a Writing Containing the Essential Terms of the Agreement
Even assuming, arguendo, the existence of a binding oral agreement, such an agreement alone does not satisfy the Statute of Frauds. Lamantea must also provide evidence of a writing containing the essential terms of the alleged agreement. Schwanbeck, supra, 412 Mass, at 710. The essential terms include “the nature of the transaction, the parties, the locus of the property and the purchase price," ABC Auto Parts, Inc. v. Moran, 359 Mass. 327, 330 (1971), as well as the consideration for the conveyance. Schwanbeck at 710. See also McCarthy v. Tobin, 429 Mass. 84, 86 (1999) (offer to purchase binding where it includes all material aspects of agreement and indicates parties’ intent to be bound). The evidence at bar does not suggest that, at trial, Lamantea will likely satisfy that standard.
Lamantea asserts that the oral agreement to exchange a grading easement on his property for the conveyance of Parcel L was memorialized by a Plan recorded with the Worcester District Registry of Deeds in August of 1991. The unsigned Plan depicts a temporary grading easement on Lamantea’s property and states that Parcel L is to be conveyed to Lamantea. It does not, however, set forth any of the terms of an agreement between the parties.[5]
In A.B.C. Auto Parts, Inc., supra, the Supreme Judicial Court found an endorsed check sufficient to *505 satisfy the Statute of Frauds where the endorsement read “Deposit on property at 227 Prospect Street— Subject to approval of trust. Total price of 40 thousand dollars.” In that case, the Court held that the writing on the check contained the essential terms of the agreement, including the identity of the parties, the nature of the transaction and the purchase price. At bar, in contrast, the Plan upon which Lamantea relies contains no such information. For example, the Plan suggests no relationship, in the nature of consideration, between the grant of an easement and the conveyance of Parcel L. Nor does the Plan contain any information as to the parties to the transaction or the nature of the alleged transaction. Where the Plan does not contain the essential elements of the alleged agreement, the Plan is insufficient, as a matter of law, to satisfy the requirements of the Statute of Frauds. Lamantea has adduced no evidence which might, at trial, support the proposition that the requisite writing exists.
3. The Requirement of Partial Performance
Lamantea next argues that he is entitled to specific performance because his allowing of the placement of fill on his property constituted partial performance of the alleged oral agreement and thus relieved the agreement of its non-compliance with the Statute of Frauds. His argument relies on the proposition that an oral contract for the transfer of an interest in land may be specifically enforced “notwithstanding failure to comply with the statute of frauds, if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific performance.” Restatement (Second) of Contracts §129 (1981); see also Hickey v. Green, 14 Mass.App.Ct. 671, 673 (1982). That argument is, for the reasons hereinafter stated, not availing.
In Hickey, the Appeals Court allowed specific performance of an oral agreement for the sale of land, despite the absence of a writing, because (i) both parties acknowledged that there had been an oral agreement and (ii) one party had acted to his detriment on the agreement. Id.; see also Orlando v. Ottaviani, 337 Mass. 157, 161-62 (1958) (specific performance granted where holder of option to buy 15-foot-wide strip of land surrendered option in reliance on oral promise, by purchaser of larger parcel that included 15-foot-strip, to convey strip). Thus, where there is no dispute that the parties had a valid oral agreement, no further negotiations are contemplated, and one party has performed to his detriment in reliance on the oral agreement, some courts have enforced the oral agreement, despite the absence of a writing. Hickey, supra, at 676.
At bar, however, there is no merit to Lamantea’s claim that there was an oral agreement to swap Parcel L for a grading easement on Lamantea’s property. The absence of evidence to support the existence of an oral agreement between the parties renders Lamantea’s alleged partial performance insufficient, as a matter of law, to abrogate the Statute of Frauds. See A.B.C. Auto Parts, Inc. v. Moran. 359 Mass. 327, 330 (1971) (statute of frauds requires oral contract between the parties and memorandum containing all provisions of underlying contract with which plaintiff seeks to charge defendant). Lamantea’s effort to employ the partial performance device to evade the disabling impact of the Statute of Frauds is futile.
In sum, neither the oral agreement, nor the written memorandum nor the partial performance thrusts by Lamantea have found their target. The Statute of Frauds remains unscathed and is a bar to Lamantea’s effort to demonstrate an enforceable contract with Zoila.
B. The Statute of Limitations
1. Contract
Even assuming, arguendo, that Lamantea had established the existence of an oral contract cum written memorandum containing the essential terms of the agreement, his claim for specific performance is nevertheless barred by G.L.c. 260, §2, the statute of limitations for a contract action. See G.L.c. 260, §2. That statute provides that “[a]ctions of contract . . . shall ... be commenced only within six years next after the cause of action accrues.” The cause of action accrues at the time the contract is breached. See Barber v Fox, 36 Mass.App.Ct. 525, 527 (1994).
At bar, Lamantea asserts that WW Realty had agreed to convey Parcel L to him in exchange for a grading easement on his property. In June 1991, Christopher wrote to Lamantea, offering to sell him three parcels, including Parcel L, in return for an easement and dismissal of the lawsuit. Lamantea acknowledges in his deposition that the grading work had been completed by August 1991, when he purchased Parcel E. In the summer of 1991, therefore, Lamantea was, or should have been, aware that WW Realty was breaching what Lamantea considered to be an oral agreement to swap Parcel L for a grading easement on his property.
In ruling on a motion for summary judgment under Mass.R.Civ.P. 56, the court considers the facts in the light most favorable to the non-moving party. See Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Viewing the instant facts in the light most favorable to Lamantea, we find that the latest that a breach of the alleged agreement might have occurred was February 3, 1992, when Lamantea’s counsel wrote to WW Realty stating that “some months ago we discussed the swap of a small strip of land ... in exchange for a grading easement,” acknowledging that “the grading work (on Lamantea’s property) has been completed” and seeking to “formalize” the conveyance of Parcel L to Lamantea. At least as of the time of that letter, Lamantea was aware that the grading had been *506 completed more than a year earlier and that WW Realty had neither conveyed, nor expressed any intention to convey, Parcel L to him. The instant action was not filed, however, until April 28. 1999, more than seven years after the cause had accrued, Because Lamantea failed to bring his breach of contract claim within six years of the alleged breach, his action is barred by the statute of limitations.
2. Trespass
In Count Two of his complaint, Lamantea contends that he never gave WW Realty permission to grade and fill his property. Consequently, he argues, the fill constitutes a continuing trespass on his land and he may recover within twenty years after entry first occurred. See Carpenter v. Texaco, 419 Mass. 581, 583 (1995). Defendants respond that the statute of limitations for a trespass claim is three years and that Count Two is thus barred by the tort statute of limitations, G.L.c. 260, §2A. Defendants have the better of the argument.
A claim for continuing trespass “must be based on recurring tortious or unlawful conduct, and is not established by the continuation of harm caused by . . . terminated tortious or unlawful conduct.” Carpenter v. Texaco, 419 Mass. 581, 583 (1995). At bar, the alleged harm to Lamantea arises from the placement of fill on his property in 1991. That act of placement terminated in 1991. Although the one-time placement of the fill may have resulted in permanent harm, it does not thereby alchemize itself into the “repeated or recurrent wrongs involving new harm to property on each occasion that is required to support a claim of continuing trespass. Id.
The case relied upon by Lamantea, Franchi v. Boulger, 12 Mass.App.Ct. 376, 379 (1981), is inapposite. In Franchi, the court found an ongoing and continuous nuisance where parts of a retaining wall, knowingly built on an abutting property, were “likely to fall at any time.” Id. At bar, there is no allegation that the fill on Lamantea’s property has resulted in “repeated or recurrent wrongs involving new harm to property on each occasion.” Carpenter v. Texaco, Inc., 419 Mass. 581, 583 (1995). Lamantea’s trespass count must, therefore, be deemed precluded by G.L.c. 260, §2A.
C. Encroachment
Finally, Lamantea argues that even if the existence of the fill on his property does not constitute a continuing trespass, he is entitled to equitable relief because the presence of the fill is an encroachment on his property. The general rule in Massachusetts is that an owner of land is entitled to an injunctive relief for an encroachment on his property. See Geragosian v. Union Realty Co., 289 Mass. 104, 108 (1935). See also Peters v. Archambault, 361 Mass. 91, 92 (1972) (landowner ordinarily entitled to mandatory equitable relief to compel removal of structure significantly encroaching on his land). In certain “exceptional circumstances,” however, equitable relief may be denied, leaving the plaintiff to a remedy of damages. See Strauss v. Oyster River Condominium Trust, 417 Mass. 442, 451 (1994). In determining whether an encroachment must be removed, the court applies a fact-specific analysis. See Goulding v. Cook, 422 Mass. 276, 277-78 (1996).[6]
The evidence at bar, taken in its light most favorable to Lamantea, warrants, but does not compel, the conclusion that the fill was placed on his land without his consent. This court concludes, consequently, that there is a disputed issue of fact as to whether the existence of the fill on his property constitutes an encroachment, and if so, whether the proper remedy is equitable (injunctive) relief or legal (damages). Accordingly, defendants are not entitled to summary judgment on Lamantea’s claim for equitable relief for the placement of fill on his property.
CONCLUSION
Lamantea's claim for specific performance, in the nature of a conveyance to him of Parcel L, is barred by the Statute of Frauds. Because there is no evidence of a binding oral agreement between the parties, plaintiffs claim that partial performance avoids the curbing effect of the Statute of Frauds also fails. Plaintiffs claim for trespass and contract remedies are barred by the applicable statutes of limitations. Because there are genuine issues of material fact as to whether the existence of the fill constitutes an encroachment on Lamantea’s property, defendants are not entitled to specific performance on Lamantea’s claim for equitable relief on Count Two.[7]
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion is ALLOWED as to specific performance and trespass and DENIED as to Lamantea’s claim for equitable relief for an encroachment on his property.

 The parties dispute whether Lamantea gave permission to grade and fill his property. In Count One of his complaint, Lamantea states that he had an agreement with WW Realty to swap a grading easement for Parcel L. Valente responds that Lamantea gave him permission to grade and fill the property when it looked as though his negotiations to purchase lots in the subdivision would be successful. In a June 29, 2001 affidavit, Lamantea states “Despite the promise of Richard Zoila, Trustee, WW Realty Trust has refused to convey the intervening strip of land as agreed, despite the fact that he and his contractors were allowed to grade onto my property.” In Count Two of the complaint, however, Lamantea asserts that he never consented to the placement of fill on his property.

 Parcel L was never conveyed to Lamantea.

 The letter stated, in pertinent part, “Some months ago we discussed the swap of a small strip of land between Heywood Street and the property of Chester Lamantea in exchange for a grading easement to allow the elimination of a retaining wall along Heywood Street. Mr. Lamantea advises me that the grading work onto his properly has been completed, but the land swap and easement has not been finalized ... I would *507 appreciate it if you would review your file and let me know if we can finalize this matter in the near future.”

 The Plan, Attachment A to this memorandum, depicts a “Temporary Grading Easement 30 feet wide, northerly of and parallel to Heywood Street,” and a typewritten Note at the bottom of the Plan reciting "Parcel L is to be conveyed to Lamantea.”

 At bar, the court must consider such factors as (i) the magnitude of the encroachment, (ii) the use Lamantea has of the portion of his land on which the encroachment exists, (iii) the effect removal of the fill will have on the stability of the roadway, (iv) the costs associated with removal of the fill and construction of a retaining wall in its place; (v) defendants’ intent and/or negligence in placing the fill on Laman tea’s property; and (vi) the manner in which the encroachment denies Lamantea the beneficial use of his land. Goulding, supra; see also Peters v. Archambault, 361 Mass. 91, 92 (1972); and Ottavia v. Savarese, 338 Mass. 330, 336 (1959).

 The evidence likely to be adduced at trial may also raise genuine issues of fact as to whether Lamantea gave defendants a revocable license to grade fill onto his property. See Spencer v. Rabidou, 340 Mass. 91, 93 (1959) (where landowner grants another some authority to do some act or series of acts on his land without passing estate in the land, the authority is by its nature revocable).