SlKORA, J.

RULINGS AND ORDERS

The court has considered the Amended Verified Complaint; the Affidavits and their verified exhibits submitted by all parties; the memoranda of law submitted by the parties; and the extensive oral argument presented by counsel for all parties at the hearing of February 28, 2005.
The court hereby rules and orders as follows.
(1) It DENIES the request of plaintiff Millennium Real Estate, L.L.C. (“Millennium”), implicit in Prayers a, b, c, and oral argument, for a preliminary injunction prohibiting the transfer of ownership of the real property at 9 Cortes Street, Boston, from defendant Peter M. Giambro to defendants Michael J. Corrigan and Thomas P. Bulger.
(2) It DENIES the request in Prayer e by plaintiff Millennium for issuance of a memorandum of lis pendens pursuant to G.L.C. 184, §15, for recordation *191 against the title of the real property located at 9 Cortes Street, Boston.
(3) It ALLOWS an attachment in favor of plaintiff Millennium upon the real property at 262 Newbuiy Street, Boston, as requested in Prayers d and h, in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00). Title to the property at 262 Newbury Street is presently recorded in the name of codefen-dant Michael Giambro.

REASONING

I. Millennium’s Requests for Preliminary Injunctive Relief and Lis Pendens Relief against the Conveyance of 9 Cortes Street

A. Preliminary Injunctive Relief

To achieve a preliminary injunction against the conveyance of 9 Cortes Street by defendant Peter Giambro to codefendants Michael Corrigan and Thomas P. Bulger, plaintiff Millennium must demonstrate (1) a likelihood of success upon the ultimate merits of its claim to an enforceable agreement for sale of that property from Peter Giambro (“the Agreement”) to it; (2) actionable or inequitable irreparable harm in the absence of injunctive assistance; and (3) a lesser degree of harm to the opposing parties (Peter Giambro, John Corrigan and Thomas Bulger) from the imposition of an injunction. The court weighs these criteria in combination, and not in isolation. It does not measure and compare simply raw harm, but rather actionable or inequitable harm. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-22 (1980).

1. Likelihood of Success on the Merits against Giambro

Millennium does not enjoy a likelihood of success upon its claim for specific performance because it permitted the P&S Agreement to expire. Several clauses of the P&S governed expiration and extension.

(a) Analysis of the P&S

Clause 4 of the Agreement required Peter Giambro to convey “good and clear record and marketable title.” Clause 8 designated March 31, 2004, as the date for delivery of the deed for closing; and made time “of the essence.” Clause 10 required the seller Giambro at or before the closing date to notify Millennium of any inability to convey satisfactory title. That notice extended the closing date by 30 days. Under Clause 11, if seller Giambro had not removed the title defects “at the expiration of the extended time,” the buyer Millennium had the option to call for the return of its deposit and to render the Agreement void. Or, under Clause 12, Millennium, at the original closing date or within any extension period, could elect to accept “such title as the seller can deliver” and pay the full purchase price. Under Clause 27 any modification or amendment of the Agreement could occur only by written instrument executed by both seller and buyer. Under Clause 43 any extension of the closing date for the purpose of perfecting title was to last for the shortest period necessary.
Under Clause 47, if the seller refused or failed to perform any material requirement of the Agreement, the buyer maintained the right to enforce the sale and the seller was deemed to have waived all defenses against enforcement.

(b) Analysis of the Communications between Millennium and Peter Giambro

It is undisputed that Millennium and Peter Giambro agreed to extend the closing date from March 31 to April 22, 2004 (Affidavit of Peter Giambro at paragraph 9, id., at Exhibit F, a copy of the letter dated April 14, 2004, from attorney Robert Horgan for Millennium to attorney William Rowerdink for Giambro).
After April 22, 2004, communication continued by correspondence between attorney Horgan and attorney Rowerdink, and allegedly by oral discussion between Peter Giambro and Yan Schecter as president of Millennium. I have studied the verified copies of letters between the attorneys: (1) letter from Horgan to Rowerdink dated July 16, 2004; (2) letter from Rowerdink to Horgan dated July 21, 2004; (3) letter from Horgan to Rowerdink dated August 23, 2004; (4) letter from Horgan to Rowerdink dated September 20, 2004; (5) letter from Horgan to Rowerdink dated November 8, 2004; and (6) letter from Rowerdink to Horgan dated November 9, 2004.
In the letter of July 16, Horgan charges that Peter Giambro remains in breach of the Agreement by reason of his failure to clear the title of defects and to clear the property of tenants; that Millennium considers the Agreement still binding; and that Giambro has no right to market 9 Cortes Street to any other prospective buyers (first paragraph). In the responsive letter of July 21, Rowerdink expresses the hope that the parties can solve “any and all problems” upon his return from vacation on August 3. In his letter of August 23, Horgan indicates Millennium’s need for title clearance items (a deed from Giambro heirs; a tax lien waiver). In the letter of September 20, Horgan asserts that Peter Giambro has taken no action to remove title defects, but that Millennium and its lender have now become willing to take the property with the defects and to schedule a closing. On November 8, Horgan wrote Rowerdink that Millennium remained willing to accept the title deficiencies and to close but that Giambro had been completely unresponsive to those proposals. That letter threatened litigation. By letter of November 9, Rowerdink responded that Millennium had never stated a willingness to accept the property with title defects; that it had never discussed a closing date; and that he understood Peter and Ronald Giambro to have had multiple conversations with Yan Schecter about the 9 Cortes Street transaction.
From this train of communication I draw the following conclusions. Millennium viewed the Agreement to *192 confer on it a self-renewing or continuing extension so long as Peter Giambro failed to make an effort to cure the title defects. It appears to derive this view from Clause 4 (duty to convey clear record and marketable title) and Clause 48 (seller’s failure to perform as required triggers a waiver of all defenses and leaves the buyer with all rights to enforce the sale). It viewed the Agreement as continuously extended and binding.
Giambro did not take action to clear title, despite the apparent duty to do so in Clause 4. He took the position that Millennium had agreed to accept title “as is” or with defects by a letter of February 27, 2004, from Horgan to Rowerdink (Giambro Affidavit at paragraph 5 and its Exhibit B, the February 27 letter) allegedly subsumed into the subsequent Agreement dated March 12, 2004. The Agreement makes no reference to such a covenant; it requires delivery of clear and marketable title; it supersedes any such prior understanding (integration Clause 49); and Horgan’s letter of February 27 refutes it (first paragraph): “[P]lease be advised that [when] Mr. Schecter agreed to take the property ‘as is,’ that term was used in its ordinary course to refer to the physical condition of the building . . .” Peter Giambro’s version of these facts is not credible; it is specious.

(c) Legal Analysis

However, as a matter of contract interpretation and law, Millennium’s view of a self-renewing and continuous extension of the Agreement is not sustainable. The governing provisions are the ones specifically addressing the subject of extension. Read together, Clauses 10 and 11 provided several alternate courses of action to Millennium as a buyer confronting the delivery of imperfect title at closing: (1) under Clause 10, to accept a 30-day extension of the closing upon the failure of reasonable efforts and written notice by the seller Giambro; (2) under Clause 11, by close of the extension, to rescind the Agreement if Giambro had not cured the title defects by the end of the extension; and (3) under Clause 12, “at either the original or any extended time for performance to accept such title as the SELLER can deliver . . . and to pay therefore the purchase price without deduction . . .” (emphasis supplied). A fourth alternative is implicit: to execute with Giambro one or more extensions of the closing as negotiation of the title defects continued.
The specific buyer’s remedies of Clauses 10,11, and 12, all called for action before the expiration of time for closing. The Agreement always maintained an endpoint. Other Clauses call for time to be of the essence (Clause 8); for any extension of the closing date to be as short as possible (Clause 43); and for any modification of terms to be by written agreement (Clause 27). These specific provisions supersede the general language of Clause 47 that the buyer may sue to enforce the Agreement against the seller’s breach. That Clause still requires a determination of the breach. It is not self-executing. In the face of the multiple specific clauses, one cannot reasonably read it to confer on Millennium an indefinite, unwritten, unagreed extension period. At the expiration of the only written agreed extension on April 22, 2004, Millennium had to take one of the alternate available courses of action to preserve the right to specific enforcement. It could not drift forward for seven months without formal action. If then (after formal action) Giambro had resisted or evaded further extension and the alternative remedies, it could have and should have sued promptly for specific performance.
For these reasons Millennium does not enjoy a probability of ultimate success upon the merits of its claim for breach and specific performance of the Agreement against Giambro. As I will discuss below, it does enjoy a probability of success upon a claim for damages against Giambro for alternate forms of wrongdoing.
2. Likelihood of Success upon the Ultimate Merits against Corrigan and Bulger
Upon the basis of the present factual materials, I find it more probable that Corrigan and Bulger are bona fide purchasers of 9 Cortes Street than that they are knowing violators of Millennium’s right to purchase the property (Amended Complaint Count Seven for tortious interference; and Count Ten for c. 93A misconduct).
I credit Corrigan’s affidavit testimony that, during his interest in 9 Cortes Street between September and December 2004, he became aware of Millennium’s interest in it (through a conversation with Schecter) but that he did not become aware of any existing contract for sale between Giambro and Millennium (id., at paragraph 4). I credit it because, if Corrigan had knowledge of such a contract or arguable contract, he would more likely not have purchased the property in December and January of 2004, 2005. An awareness of an arguable P&S between Giambro and another buyer would inform a prudent second buyer that he was purchasing a lawsuit. It is not plausible that Corrigan and Bulger would have known of the prior Agreement and gone forward with the purchase so as to accept the entanglement of their time-sensitive renovation project in a lawsuit.
Further, as Corrigan and Bulger point out (Opposition at 4), Millennium must prove that they had actual notice of the preexisting instrument. Richardson v. Lee Realty Corp., 364 Mass. 632, 634-35 (1974); and General Builders Supply Co. v. Arlington Cooperative Bank, 359 Mass. 691, 697 (1971). Mere suspicion is not enough to negate bona fide purchaser status. Id., McCarthy v. Lane, 301 Mass. 125, 128-29 (1938).
Finally, as a matter of ultimate legal merit discussed above, a binding contract more probably did not exist for transfer of 9 Cortes Street from Giambro to Millennium as of December 24, 2004, when Corrigan and Bulger placed it under agreement. No *193 contract existed with which they could tortiously interfere and against which they could commit unfair or deceptive action in violation of c. 93A.

3. Irreparable Harm

By reason of the uniqueness of each parcel of real estate, the loss of a purchase typically qualifies as irreparable harm warranting injunctive relief rater than compensatory damages. Here, however, Millennium in its Amended Verified Complaint reports that its harm is measurable and curable by damages. Id., at paragraph 24:
Millennium intends on developing the Property into condominiums, and the Seller has been aware of Millennium’s plans since before the P&S was signed by the parties. Millennium expected to net a profit of $1,535,400.00 and the Seller was informed of this by Millennium.
Consequently (as codefendant Corrigan and Bulger point out, Opposition at 9) Millennium in these circumstances has an adequate legal remedy of damages for any wrongdoing adjudicated against Giambro. A preliminary injunction is unnecessary. Nor is a memorandum of lis pendens and its injunctive effect.
4. Countervailing Harm
The harm of a preliminary injunction and/or lis pendens would fall not upon codefendant developers Corrigan and Bulger. I credit Corrigan’s report that such an encumbrance upon the 9 Cortes Street property would disrupt or destroy their opportunity to develop and to convey the building in time to meet their present financial commitments (Affidavit at paragraphs 8 and 9). Since the injunction and lis pendens are not necessary to remedy Millennium’s harm, and since they would severely endanger the interests of Corrigan and Bulger, the balance of harm weighs against the allowance of those sanctions.

B. Lis Pendens Relief

I have analyzed and rejected the claim of Millennium to lis pendens relief under the same standards as preliminary injunctive relief because both sanctions would impose the same practical effect upon the real property at 9 Cortes Street: the prevention of its marketability to the detriment of Millennium or more likely Corrigan and Bulger.
One other factor supports this common sense analysis. Under the amendments to G.L.C. 184, §15(b), by St. 2002, c. 496, §2, issuance of the memorandum became far more restricted. The amendments require the court to decline lis pendens relief if it determines that preliminary injunctive relief would furnish an adequate remedy. Here I have found that preliminary injunctive relief is undeserved. A fortiori, I reason that the statute would not authorize the more drastic sanction of lis pendens if the milder one of a preliminary injunction is not justified. [The amendments mark a sharp departure from, and an apparent legislative reaction to, the former lis pendens standard: that any claim of an interest in land, without regard to merit, mandated the issuance of the memorandum. Sutherland v. Aeolean Development Corp., 399 Mass. 36, 40-41 (1987).]
One other path of analysis converging at the same conclusion is that the legal improbability of Millennium’s entitlement to specific conveyance of title leaves it without a sufficiently strong “claim of right to title” required by the lis pendens statute, G.L.C. 184, §159b) (Amended Opposition of Corrigan and Bulger, Argument I).

II. Millennium’s Request for Attachment Relief Against the Real Property at 262 Newbury Street, Boston

A plaintiff seeking an attachment must show a reasonable likelihood of recoveiy of an amount uncovered by insurance or other security. Mass.RCiv.P. 4.1(c). From the factual materials I find a reasonable likelihood that Peter Giambro made no diligent or good faith efforts to perform his duty under the Agreement of March 12, 2004, to achieve clear and marketable title for Millennium; and that he continued to induce Millennium’s reliance upon the Agreement so as to maneuver it past the expiration date and to distract it from the exercise of its contractual enforcement options. A reasonably inferable motive and purpose for this conduct was to maintain Millennium as one available purchaser as Giambro searched for another at a higher price.
As evidence of these inferences, see Giambro’s Affidavit at paragraph 5 (the misrepresentation of the meaning of “as is” in Horgan’s letter of February 27, 2004); id., at paragraph 11 (Giambro’s position that the Agreement had expired as of the close of April 22, 2004); Horgan’s letter of July 17,2004, first paragraph (alleging that Giambro is marketing the property to third persons); Rowerdink’s letter of July 21, 2004, second paragraph (suggesting to Horgan that the deal would still be salvageable after August 3, 2004); Horgan’s letter of September 29, 2004 (indicating the occurrence of further discussions of the clearance of title defects); and Horgan’s letter of November 8, 2004 (indicating no effort on the part of Giambro to clear title or to respond to Millennium’s willingness now to close with uncleared title). At no point did Giambro act to clear title; or to close with uncleared title; or to communicate his position that the Agreement had expired; or to return Millennium’s $35,000.00 deposit. The inferable strategy was to let the Agreement expire or die; but to keep the potential deal alive as a fallback; and to seek alternate buyers at a better price.
Millennium’s failure to secure extensions and to preserve its right to specific performance does not forfeit its separate claims for damages based upon alternate theories of tortious, equitable, or statutory wrongdoing, including its claims for promissory estop-pel (Amended Complaint, Count Two); breach of contract for damages (Count Three); misrepresentation *194 (Count Four); negligent misrepresentation (Count Five); unjust enrichment (Count Six); fraudulent conveyance of 262 Newbury Street to avoid financial responsibility (Count Eight); breach of the implied covenant of good faith and fair dealing (Count Nine); and violation of c. 93A (Count Ten).
The preliminary factual materials make these claims viable and probable candidates for success, in part or in combination. In particular the claims of promissory estoppel and misrepresentation draw support from decisional law. For instances of promissory estoppel liability for patterns of “stringing along” a reliant party, see especially Greenstein v. Flatley, 19 Mass.App.Ct 351, 356-57 (1985). See also Hickey v. Green, 14 Mass.App.Ct. 671, 672-76 (1982); Loranger Construction Corporation v. E.F. Hanserman Co., 6 Mass.App.Ct. 152, 154-59 (1978), aff'd, 376 Mass. 757, 760-61 (1978); and Cellucci v. Sun Oil Co., 2 Mass.App.Ct. 722, 733-34 (1974).
In the present papers defendant Peter Giambro does not dispute the allegation of Millennium’s Amended Verified Complaint that through the last 17 months he has sold all his real estate holdings in Boston (paragraph 25); and that on August 22, 2003, he transferred the property at 262 Newbury Street to his brother and codefendant Michael Giambro for the nominal price of one dollar (id., at paragraph 26 and Exhibit B). In the circumstances I infer the transfer to be one of form and not substance. I infer that Peter Giambro maintains a continuing interest in 262 New-bury Street.
Millennium estimates its lost expectancy or benefit-of-the-bargain damages as $1,535,400.00 (id., at paragraph 24). However it has not furnished a reasoned itemization of that figure.
I conclude, from the preliminary available information and likely applicable law, that Millennium has a reasonable likelihood of success upon one or more of its damages claims; that success would generate expectancy or lost profits damages; and that a rough hewn estimate of such damages approximates $750,000.00, or about 50% of Millennium’s current damages projection. I have applied a substantial discount to its estimate because the figure is not itemized; because a conservative adjustment seems necessary without itemization; and because profits, or lost profits, on the part of real estate redevelopers materialize from a desired gain of at least 100% upon the raw realty cost (here $700,000) embodied in the contract price between Giambro and Millennium.
Upon further data and analysis, either side may seek modification (or dissolution) of the attachment upon 262 Newbury Street as the only presently known substantial realty holding of defendant Peter Giambro.

Conclusion

The present analysis and orders rest upon the parties’ opening papers and factual materials. The court has assessed the ultimate merits of liability and damages as well as possible upon such preliminary information. The results of discovery and investigation may entitle any party to seek alteration of these preliminary determinations in light of developing facts.