Hurtubise *v.* McPherson.

ROBERT J. HURTUBISE *vs.* SCOTT B. McPHERSON.[1]

No. 10-P-1252.

Worcester. June 3, 2011. - August 22, 2011.

Present: GRAHAM, BROWN, & SIKORA, JJ.

*Frauds, Statute of. Estoppel. Contract,* Sale of real estate, Specific performance. *Real Property,* Specific performance.

In a civil action seeking specific enforcement of an oral agreement to convey a parcel of land in exchange for the conveyance of an adjacent parcel of land, the defendant was estopped from asserting the Statute of Frauds, where the plaintiff occupied a parcel of the defendant's land and undertook the expense of construction in reliance on the defendant's apparent agreement [188-190]; further, indefiniteness did not prevent specific enforcement, where the parcels were reasonably identifiable [190-192].

CIVIL ACTION commenced in the Superior Court Department on October 11, 2005.

The case was heard by *C. Jeffrey Kinder,* J.

*John M. Dombrowski* for the defendant

*Joseph E. Mizhir* for the plaintiff.

SIKORA, J. In this case an equitable standard justifies the specific enforcement of an oral agreement for the conveyance of land. At the conclusion of a bench trial, a Superior Court judge ordered the defendant, Scott B. McPherson, individually and as trustee of S.B. Park Realty Trust, to complete an exchange of land with Robert J. Hurtubise, the plaintiff. McPherson[2] appeals from the resulting judgment compelling specific performance of the land swap. He argues (1) that the Statute of Frauds precludes enforcement of the oral agreement, and (2) that the parties' agreement

---

[1]Individually and as trustee of S.B. Park Realty Trust.

[2]McPherson owned one part of his tract individually and another part as trustee of S.B. Park Realty Trust. Because in this instance he exercised unified control over both parts, we use his name to signify his conduct in both capacities.

was too indefinite for enforcement. For the following reasons, we affirm.

*Background.* The judge made the following findings. They are well supported. In particular, he had the opportunity to assess the credibility of the parties under direct and cross-examination and at appropriate points to request explanatory testimony. Mass. R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996).

Hurtubise and McPherson owned adjoining tracts of land in the town of Templeton (town). Hurtubise operated a storage business on his property. In late 1999 or early 2000, he wanted to build an additional storage shed along the border between his property and McPherson's property. Hurtubise realized that he could not meet the setback requirements of the local zoning ordinance unless he acquired land from McPherson. Hurtubise approached McPherson, explained his need, and proposed a land trade, offering to convey to McPherson a portion of the front of his (Hurtubise's) property in exchange for the portion of McPherson's land on which Hurtubise intended to erect the new storage shed. McPherson agreed to the proposal and the parties shook hands.[3]

Hurtubise proceeded with his plans for construction of the new building. He obtained a building permit in June of 2000 and began to excavate along the border of McPherson's lot. During the seven to eight weeks of construction through July and August, Hurtubise saw McPherson at the site. McPherson never objected to the location of the new building. Hurtubise eventually constructed a 300-by-thirty-foot storage shed. The total cost of the project came to $39,690.

After construction, Hurtubise sent McPherson a plan outlining the details of the land swap. The plan showed that the new storage shed extended onto McPherson's lot by approximately ten feet. McPherson objected and accused Hurtubise of taking

---

[3] As the judge wrote in his findings, "Based upon my assessment of the credibility of the trial witnesses, I conclude that the original exchange of promises was more than just preliminary discussion and that a deal was struck to exchange parcels of land."

The parties gave conflicting testimony as to whether Hurtubise agreed also to let McPherson have a large pile of loam and sand situated on Hurtubise's property. The judge did not make a finding on this question because it was immaterial to his decision. Consequently, we do not address it either.

more land than he initially had represented. McPherson informed Hurtubise that a payment of $250,000 would resolve the dispute. The judge found that that amount "grossly exceeded the value of the property at issue." Hurtubise refused to pay McPherson.

McPherson then notified the town that Hurtubise's new building encroached on his property. The town's building commissioner revoked Hurtubise's building permit and ordered him to cease occupancy of the storage shed. After McPherson threatened to demolish the building, Hurtubise brought suit for specific performance of the oral agreement. In response, McPherson raised the Statute of Frauds as an affirmative defense.[4]

The trial occupied two days. The judge concluded that the parties had agreed to exchange parcels from their respective tracts. He held that the agreement was enforceable, despite the failure of the parties to comply with the Statute of Frauds, because Hurtubise detrimentally relied upon the agreement by construction of the new building, and because McPherson implicitly assented by silent observation throughout the construction process. The judge ordered McPherson to convey to Hurtubise the smallest possible parcel of land that would allow the storage shed to comply with the setback requirements of the local zoning ordinance. He required Hurtubise to convey to McPherson a parcel of equal size from the front of his (Hurtubise's) land.

*Analysis.* 1. *Statute of Frauds.* As a black letter rule, the Statute of Frauds bars suit "[u]pon a contract for the sale of lands . . . or of any interest in or concerning them . . . [u]nless the promise, contract or agreement . . . is in writing and signed by the party to be charged therewith." G. L. c. 259, § 1. However, an equitable qualification puts some flexibility into the joints of the Statute. Such an agreement "may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, *in reasonable reliance on the contract* and on the continuing assent of the party against whom enforcement is sought, *has so changed his position that injustice can be avoided only by specific*

---

[4]He also asserted numerous counterclaims, including breach of contract, trespass, interference with advantageous business relations, conversion, slander of title, and violation of G. L. c. 93A, and sought to quiet title. At the conclusion of trial, the judge found in favor of Hurtubise upon all the counterclaims.

*enforcement.*" *Hickey* v. *Green*, 14 Mass. App. Ct. 671, 673 (1982),[5] quoting from Restatement (Second) of Contracts § 129 (1981). See *Orlando* v. *Ottaviani*, 337 Mass. 157, 161-162 (1958) (defendant estopped from raising Statute of Frauds; pursuant to oral agreement, plaintiff relinquished option to buy lot in exchange for defendant's promise to sell plaintiff small strip of lot); *Barber* v. *Fox*, 36 Mass. App. Ct. 525, 530-531 (1994) (oral contract enforceable where plaintiff transferred her interest in land to her brother and his wife in exchange for their promise to convey back to her a parcel of the land in the future). Contrast *Pappas Industrial Parks, Inc.* v. *Psarros*, 24 Mass. App. Ct. 596, 598-599 (1987), in which the parties never agreed upon the second parcel necessary for a contemplated land swap.

The application of this equitable exception to the operation of the statute has depended upon the degree of reliance on the oral agreement by the party pursuing specific enforcement. Compare *Potter* v. *Jacobs*, 111 Mass. 32, 36-37 (1872) (plaintiffs, buyers of land pursuant to oral contract, entitled to specific performance where they immediately possessed property, erected new building, removed fences, and rendered partial payment to defendant seller), with *Burns* v. *Daggett*, 141 Mass. 368, 375 (1886) (plaintiff buyer not entitled to specific performance where he made no improvement to property and value of plaintiff's use and occupation of property exceeded amount which plaintiff had paid to defendant seller). While "earlier Massachusetts decisions laid down somewhat strict requirements for an estoppel precluding the assertion of the Statute of Frauds, . . . 'more recent decisions . . . indicate a trend on the part of the [Supreme Judicial C]ourt to find that the circumstances warrant specific performance.' " *Hickey* v. *Green*, *supra* at 673-674, and cases cited, quoting from Park, Real Estate Law § 883, at 334 (1981).[6]

In our case, Hurtubise occupied a parcel of McPherson's land and undertook the expense of construction in reliance upon McPherson's apparent agreement. McPherson watched Hurtubise's

---

[5]The judge specifically relied upon *Hickey* v. *Green*.

[6]According to the Restatement (Second) of Contracts § 129 comment a (1981), the exception "was established by English courts of equity soon after the enactment of the Statute [of Frauds in 1677]." It permits courts with equitable powers to exercise discretion with appropriate "caution in light of all the circumstances." *Ibid*. See statutory note preceding § 110.

reliance unfold through seven to eight weeks of construction and $39,690 of expenditures. In these circumstance McPherson "is held, by force of his . . . silent acquiescence, which ha[s] misled [Hurtubise] to his harm, to be estopped from setting up the statute of frauds." *Glass* v. *Hulbert*, 102 Mass. 24, 36 (1869). See *Davis* v. *Downer*, 210 Mass. 573, 576 (1912) (defendant estopped from raising Statute of Frauds; oral promise to convey land enforceable where plaintiff paid for construction of house on property); 4 Corbin, Contracts § 18.15, at 539 (rev. ed. 1997) ("In nearly all jurisdictions . . . an oral contract for the sale or lease of land will be made specifically enforceable if possession is taken under the contract and valuable and permanent improvements are made upon the land").

2. *Indefiniteness.* Because the parties did not specify the dimensions and the detailed boundaries of the parcels to be traded, are the terms of the oral understanding clear enough for specific enforcement? Generally, "the essential terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained." *Simons* v. *American Dry Ginger Ale Co.*, 335 Mass. 521, 523 (1957), citing *Caggiano* v. *Marchegiano*, 327 Mass. 574, 579 (1951). "However, a contract is not to be held unenforceable 'if, when applied to the transaction and construed in the light of the attending circumstances,' the meaning can be ascertained with reasonable certainty." *Ibid.*, quoting from *Cygan* v. *Megathlin*, 326 Mass. 732, 734 (1951). "Even if an aspect of an agreement is informal, obscure, difficult of satisfactory interpretation, and the subject of dispute by the parties as to its meaning, a court should '[s]o far as reasonably practicable . . . give[] a construction which will make it a rational business instrument and will effectuate what appears to have been the intention of the parties.' " *Hastings Assocs., Inc.* v. *Local 369 Bldg. Fund, Inc.*, 42 Mass. App. Ct. 162, 170 (1997), quoting from *Finn* v. *McNeil*, 23 Mass. App. Ct. 367, 372 (1987).

To render a contract unenforceable, "[i]ndefiniteness must reach the point where construction becomes futile." *Weiner* v. *Pictorial Paper Package Corp.*, 303 Mass. 123, 131 (1939), quoting from *Heyman Cohen & Sons, Inc.* v. *M. Lurie Woolen Co.*, 232 N.Y. 112, 114 (1921) (Cardozo, J.). Modern precedents

favoring enforceability against curable indefiniteness extend to contracts for the conveyance of land. See *Lafayette Place Assocs.* v. *Boston Redev. Authy.*, 427 Mass. 509, 517-519 (1998) (contractual formula for computation of price of development land amid future market uncertainties furnishes adequate definiteness); *McCarthy* v. *Tobin*, 429 Mass. 84, 86-88 (1999) (accepted offer to purchase is sufficiently definite if it designates property and price, even though ancillary terms remain open for final contract).

McPherson contends that Hurtubise and he never agreed with particularity upon the area, location, and parameters of the parcels nor upon the size and position of the proposed building. The reasoning of *Barber* v. *Fox* answers that argument. There the plaintiff conveyed her undivided inherited interest in the family farm to her brother and his wife in exchange for their promise to convey back to her, at some future time, a parcel of the property described as "the knoll in the hog field" or, by agreement, a substitute parcel. 36 Mass. App. Ct. at 526. In effect, the parties did not agree upon the location or the size of the parcel, or the time of conveyance. Nonetheless this court found the agreement enforceable as a matter of fairness. *Id.* at 531. The plaintiff's reliance was substantial, and "irretrievabl[e]" because the brother and his wife had sold part of the property, and permitted a remedy overriding the omission of a more specific description of the land promised her. See *ibid.*

This case presents parcels of reasonable identifiability. The one to be subtracted from McPherson's land was visible to him. Over a period of almost two months, he observed without objection the gradual formation of the footprint and the body of Hurtubise's building on his (McPherson's) property. The parcel coming from Hurtubise's lot received an adequate description. He designated an area near the front of his property, close to an abutting road and existing fence, and near the house on McPherson's land. With the aid of a plan entered as a trial exhibit, Hurtubise pointed out the plot in the course of his testimony. That evidence enabled the judge to define the reciprocal parcel. He reasonably inferred that its area should equate with the storage building parcel and that its location should be at or near the

place designated by Hurtubise's testimony. In these circumstances indefiniteness did not prevent specific enforcement.[7]

*Judgment affirmed.*

---

[7]In light of our disposition, we need not address McPherson's argument regarding his counterclaims, which — independently — lacked the elaboration required for proper appellate advocacy. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).