The plaintiff, Kirin Produce Co., Inc. (Kirin), appeals from a judgment entered by a judge of the Superior Court dismissing its amended complaint for failure to allege facts plausibly suggesting that the parties entered into an enforceable agreement that satisfies the Statute of Frauds, and declaring the rights of the parties. In so doing, the judge concluded that Kirin is not entitled to specific performance, nor to challenge any agreement by Lun Fat Produce, Inc. (Lun Fat), to sell Lun Fat's business and property to a third party. We affirm the portion of the judgment allowing the motion to dismiss; because the amended complaint was dismissed, we vacate the declaratory judgment.
Background. Kirin's amended complaint alleges the following facts. Kirin is a produce wholesaler with two retail stores in Boston. Lun Fat also is a produce wholesaler with a retail store in Boston (business); its principal place of business (not its retail store) is located at 93 Newmarket Square, Boston (property). Peter Tam is the president and treasurer of Lun Fat and is also the trustee of the Tam Realty Trust, which owns the property. (We refer to Lun Fat and Tam collectively as Lun Fat.) In or about May, 2015, the parties began discussing the possibility of Kirin purchasing Lun Fat's business along with the property. Over the next several months, the parties discussed the terms of a potential deal and, in December, 2015, they exchanged a draft letter of intent. Thereafter, discussions stalled and the letter of intent was never finalized or signed by either party.
In August, 2016, Kirin became aware that a third party was interested in purchasing the Lun Fat business and property. On August 22, 2016, Kirin proposed to Lun Fat, through a broker, Kai Lau, a set of terms for it to purchase Lun Fat's business and property.[3] Kirin sent two additional revised offers on September 7 and 12, 2016, apparently hoping to spark Lun Fat's interest in selling to Kirin. The September 12, 2016, offer was described as Kirin's "serious, reasonable 'Lease and Then Buy' Offer." Lun Fat responded (on September 15, 2016) with nine changes to the terms. Kirin considered this Lun Fat's counteroffer. On September 16, 2016, Kirin agreed to four of Lun Fat's changes (items numbered 1, 3, 4, and 6), but countered with changes to items numbered 2, 5, 7, 8, and 9. After a face-to-face meeting between the parties on September 18, 2016, Lun Fat informed Kirin on September 23, 2016, that it was "NOT ready to accept the latest Offer on the table."
On September 23, 2016, Lau suggested to Kirin that "if you are really interested in this deal, please MARK UP what you can agree in the spread sheet and send it back to me. I think if you can accept ALL [Lun Fat]'s changes, then [Lun Fat] will be 'leaning towards to sell [sic ] it to you.' " Thereafter, on September 24, 2016, Kirin accepted all nine of Lun Fat's suggested changes in the September 15 "counter offer," but added another item, "item # 10 ... as part of the final offer," revising the liquidated damages term.[4] Kirin also indicated that "[a] check of $10,000 as deposit for this deal is ready for [Lau] to pick up in [Kirin's] office." Lun Fat did not respond to this "final offer," and subsequently sold the business and property to a third party, Richard Q. Chen.
On October 19, 2016, Kirin's attorney, Mark Furman, sent a letter to Lun Fat purporting to "put [it] on notice that [Lun Fat has] entered into an enforceable agreement with Kirin and that [Lun Fat] must conclude the agreed-upon sale to Kirin." In the letter, Furman asserted that, because Kirin had accepted Lun Fat's September 15, 2016, counteroffer, Lun Fat "cannot revoke the offer at this time without breaching the parties' agreement, the implied covenant of good faith and fair dealing, and Mass. Gen. Laws ch. 93A."
On October 24, 2016, Lun Fat responded to Kirin's demand for specific performance, indicating that the parties differed in their interpretations as to what had transpired during the September discussions; according to Lun Fat, only the "possibility" of selling the business and property was discussed, but "there was never any firm decisions reached to advance the deal(s) beyond negotiating what it would take to convince" Lun Fat to sell. In this letter, Lun Fat asserted that Kirin's "acceptance of all the items contained in the worksheet(s) did not automatically result in an enforceable agreement but simply would've positioned [Kirin] in a more competitive situation which may have seen [Lun Fat] leaning towards selling to them." According to Lun Fat, as of October 24, 2016, it still had not received from Kirin any formal written offer for it "to accept, reject, or counter." On October 31, 2016, Kirin filed a complaint against Lun Fat seeking a declaratory judgment that the parties had entered into an enforceable agreement, an order of specific performance of the contract to sell Lun Fat's business and property, and damages.
After a hearing on Lun Fat's Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), motion to dismiss, the judge concluded that the parties had never entered into an enforceable agreement that satisfied the Statute of Frauds, and dismissed Kirin's claims for specific performance, breach of contract, implied covenant of good faith and fair dealing, and violation of G. L. c. 93A. The judge also entered a declaration that there was no enforceable contract between the parties, and that, as a result, Kirin has no right to challenge Lun Fat's sale of the business and property to Chen.[5] Kirin timely appealed.
Discussion. " 'We review the allowance of a motion to dismiss de novo,' Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011), accepting as true 'the factual allegations in the plaintiff['s] complaint, as well as any favorable inferences reasonably drawn from them.' " Genovesi v. Nelson, 85 Mass. App. Ct. 43, 46 (2014), quoting from Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998). "Although detailed factual allegations are not required, a complaint must set forth 'more than labels and conclusions. ... Factual allegations must be enough to raise a right to relief above the speculative level.' " Ibid., quoting from Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).
"Contract formation requires a bargain in which there is a manifestation of mutual assent to the exchange." I & R Mechanical, Inc. v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 454-455 (2004), citing Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). See Restatement (Second) of Contracts § 17(1) (1981). This manifestation "between contracting parties generally consists of an offer by one and the acceptance of it by the other." Id. at 455. See Restatement (Second) of Contracts § 22(1) (1981). "It is elementary law that an offer must be accepted in the terms in which it is made in order to become a binding contract, and that a conditional acceptance or one that varies from the offer in any substantial respect is in effect a rejection and is the equivalent of a new proposition." Moss v. Old Colony Trust Co., 246 Mass. 139, 148 (1923). See Restatement (Second) of Contracts §§ 58 - 59 (1981).
"An enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms." Targus Group Intl., Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010). "The controlling fact, however, is always the intention of the parties, and that will normally present a question of fact for the judge." Levenson v. L.M.I. Realty Corp., 31 Mass. App. Ct. 127, 130 (1991) (citation omitted).
Nonetheless, here, no enforceable agreement was ever formed, even on the allegations in Kirin's amended complaint. First, the terms of the purchase and sale were never sufficiently definite. While the parties agreed on many of the terms offered, as indicated in Kirin's September 24, 2016, electronic mail message (e-mail), Kirin also added a tenth term, providing for $1 million in liquidated damages for a breach of the "Sale Agreement." See note 3, supra. Second, it is clear from this record that the parties had never reached a meeting of the minds, but rather, were engaged in ongoing negotiations over fluctuating terms contained in the ongoing e-mail exchanges. The language included on Kirin's spreadsheet offers expressly stated that they were "Draft Only" and "estimated ONLY, to be finalized by both parties!! Subject to change." In rejecting Kirin's September 12 "revised offer," Lun Fat countered with changes to nine separate items; in addition, Lun Fat expressly stated on September 23 that it was "NOT ready to accept the latest Offer on the table." In fact, Lau advised Kirin later on September 23 that if it accepts each of Lun Fat's nine changes, Lun Fat would be "leaning towards" consummating the deal. Kirin's September 24 "final offer" accepted each of the nine items, but then added a new term pertaining to liquidated damages. Despite the parties' numerous e-mails and meeting to discuss the potential sale, it does not appear even from the detailed facts alleged in Kirin's amended complaint that the essential terms of the deal were agreed upon, or that either party had "a present intention to be bound by [an] agreement." Situation Mgmt. Sys., Inc., supra.
In addition, no written document formalizing the agreed upon terms ever materialized.[6] We agree with the judge that, because the sale of the property was an integral part of the total transaction, the proposed deal was subject to the Statute of Frauds. "[T]he Statute of Frauds bars suit '[u]pon a contract for the sale of lands ... or of any interest in or concerning them ... [u]nless the promise, contract or agreement ... is in writing and signed by the party to be charged therewith.' G. L. c. 259, § 1." Hurtubise v. McPherson, 80 Mass. App. Ct. 186, 188 (2011). "Whether a writing satisfies the Statute of Frauds is a question of law." Simon v. Simon, 35 Mass. App. Ct. 705, 709 (1994). Since no one on Lun Fat's behalf signed a writing incorporating the agreement Kirin is seeking to enforce, the requirements of the Statute of Frauds are not met and, therefore, there is no enforceable contract.[7] See Harrington v. Fall River Hous. Authy., 27 Mass. App. Ct. 301, 306 (1989).
Because there was no enforceable contract, we agree with the judge that Kirin's breach of contract and implied covenant of good faith and fair dealing claims fail. Kirin's alleged G. L. c. 93A violation, grounded wholly on the breach of contract claim, fails as well. Finally, because the "actual controversy" raised in Kirin's amended complaint did not withstand a motion to dismiss, we vacate the declaratory judgment. Galipault v. Wash Rock Invs., LLC, 65 Mass. App. Ct. 73, 83 (2005). See G. L. c. 231A, § 1.
The portion of the judgment declaring the rights of the parties is vacated. The remainder of the judgment is affirmed.

The back and forth negotiations were done via electronic mail messages (e-mails). Each of Kirin's offers consisted of a spreadsheet containing various proposed terms and entitled "Summary of 'Lease Then Buy' Price, Terms & Conditions" and indicating that the offer was a "Draft Only, Subject to Confirmation, Verification & Change by both Seller & Buyer." The spreadsheets also stated that "All dates, $ $ and Terms are estimated ONLY to be finalized by both parties!! Subject to change." Lau indicated in an August 22, 2016, e-mail that "[o]nce both parties agree with the price and terms, then I shall put it in an official written Offer format for final review."

Item 10 read, "On the Real Estate Agreement, if either party breach [sic ] the Sale Agreement, the defaulted party will pay the other party $1,000,000 flat fee as sole remedy regardless of amount of deposit made."

Kirin filed an amended complaint seeking declaratory relief against Chen after he was allowed to intervene in the matter. The judge dismissed Kirin's action against Chen, and the propriety of that dismissal is not an issue in this appeal.

Based on this record, both Kirin and Lun Fat expected a formal written offer memorializing the material terms of the sale, as evidenced by Lau's August 22, 2016, e-mail, and Lun Fat's October 24, 2016, letter.

This principle likewise applies to any oral offer to consummate the sale of the property that may have transpired as a result of the September 18, 2016, face-to-face meeting attended by the parties.